## Appeal of Ruth A. Hatch et al.

A trustee who takes from a cotrustee, who is insolvent, a mortgage to secure money of the trust estate, which the cotrustee has used for his own purposes, and fails to see that the mortgage is properly recorded, is liable to the estate for the loss occasioned by his neglect.

In such a case where the property was sold on a subsequent mortgage properly recorded, for the amount of said mortgage, which amount was the full market value of the property, the trustee was properly surcharged with this amount as the loss sustained by the trust estate.

(Argued February 8, 1888. Decided February 20, 1888.)

January Term, 1887, No. 255, E. D., before GORDON, Ch. J., PAXSON, STERRETT, GREEN, CLARK, and WILLIAMS, JJ. Appeal from a decree of the Orphans' Court of Chester County in

the matter of the trusts under the wills of Joseph and Mary J. Jones: Affirmed.

Joseph E. Jones, trustee, presented a petition to the orphans' court praying that his account be reviewed, and that the balance for which he had been adjudged liable be reduced from $12,000 to $7,000.

The following are substantially the facts as they appeared from the report of the auditor, R. T. Cromwell, Esq., to whom the matter was referred:

Two trusts were created in favor of Ruth A. Hatch under the wills of Joseph Jones and Mary J. Jones, respectively, late of West Chester, Pennsylvania. Isaac S. Jones and Dr. Joseph E. Jones were appointed trustees thereof, and by said wills were directed to invest the principal of the trusts and to pay the interest thereof to said Ruth annually during her natural life, and were further authorized to pay said *cestui que trust* such part of the principal of said trusts as in their discretion they might deem requisite for the comfort of herself and her family; and upon the decease of said Ruth the said trustees were directed to pay the said principal, or such part thereof as might remain in their hands, to the children of said *cestui que trust*.

Isaac S. Jones and Ruth A. Hatch resided at Baltimore, Maryland.

Joseph E. Jones, who resided at West Chester, had the sole possession of the funds, and sent the income thereof, from time to time, to Isaac S. Jones, his cotrustee, who paid the same to Ruth.

Joseph E. Jones invested $4,000 of the principal in certain bonds, the interest on which was subsequently defaulted; and to meet the deficiency in the income of said Ruth he placed $1,000 of the principal in the hands of said Isaac, to be paid to said Ruth as he might think proper. Isaac paid no portion of this money to Ruth but applied it to his own use.

In 1879 the defaulted bonds were sold for $4,097.20 by said Isaac, who appropriated $4,000 of these proceeds also to his own use; and to secure the repayment of the moneys misappropriated, said Isaac, in 1879, executed to his cotrustee (who at that time knew that he had used the money) his promissory note and a

mortgage on real estate owned by him in the state of Maryland for $5,000, payable in twelve months with interest.

This mortgage was not recorded but was renewed from time to time, as required by the laws of Maryland; and the last mortgage as renewed was recorded in 1881, not, however, until after an intermediate mortgage given by said Isaac S. Jones to one Rogers to secure a personal debt to said Rogers of $3,000 had been recorded—thus becoming a second lien on said property.

In August, 1884, the said trustees settled an account in the orphans' court of Chester county, which was confirmed in September of that year, showing a balance of $12,000 in their hands, which included the note and mortgage of Isaac S. Jones for $5,000; it being known to said Joseph E. Jones at that time that the security was second to the $3,000 encumbrance.

In 1885 the mortgaged premises were bought in under foreclosure proceedings, by said Rogers, for about $3,000, thus yielding nothing for the trusts, and as Isaac S. Jones is insolvent, the note and security are believed to be worthless.

The auditor reported in favor of dismissing the petition.

The court, FUTHEY, P. J., sustained exceptions to the master's report, filing the following opinion:

We think that Dr. Joseph E. Jones is entitled to the relief prayed for to a partial extent.

The trust moneys arising from the sale of the four Pittsburgh Webster avenue bonds of $1,000 each, made use of by his cotrustee, Isaac S. Jones, for his own purposes, were not loaned by Dr. Jones to his cotrustee; neither were they moneys which Dr. Jones had in his hands and handed over to his cotrustee. The trust estate held these bonds, which were in the manual possession of Dr. Jones; default had been made in the payment of the interest thereon, and they were, after consultation between the trustees, taken by Isaac S. Jones for the purpose of collecting or disposing of them, it being deemed more convenient for him than for Dr. Jones to do so. At that time, to all appearance, Isaac S. Jones was in prosperous circumstances; he had been long in business, and Dr. Jones had no reason, whatever, to distrust him.

Isaac S. Jones made sale of the bonds, but instead of paying over the proceeds to his cotrustee, or properly investing them, he appropriated the money to his own use, without the assent

or knowledge of his cotrustee. This misappropriation was made as soon as, or very shortly after, the money was received. A few days after this collection and misappropriation of these moneys, Isaac S. Jones gave a mortgage on 573 acres of wood land, which he owned in Anne Arundel county, Maryland, to his cotrustee, Dr. Jones, for these and other moneys of the trust in his hands, amounting altogether to $5,000. There was no period after this misappropriation of the moneys when they could have been secured other than they were by the mortgage in question; and there was no step, whatever, which could have been taken by Dr. Jones, which would have made them more secure. We do not think Dr. Jones rendered himself liable to make good these moneys, by merely handing over the bonds to his cotrustee for collection. As we have said, they were not moneys which he had in hand, but securities which required the attention of some one to look after. Dr. Jones had no reason, whatever, to think it would be unsafe to intrust his cotrustee with their possession for the purpose of collection.

We think, also, that it was entirely proper, under the circumstances, that Dr. Jones should place $1,000 of the principal in the hands of his cotrustee to meet the wants of the *cestui que trust*. The *cestui que trust* resided in Baltimore, as did also Isaac S. Jones. Dr. Jones resided in West Chester. The trustees were authorized by the terms of the trust to expend a portion of the principal, at their discretion, in support of the *cestui que trust* if circumstances in the judgment of the trustees required it.

In consequence of the default in the payment of the interest on the Pittsburgh Webster avenue bonds, and the consequent diminution of the income, it was deemed proper, by the trustees, that a portion of the principal should be thus expended. Isaac S. Jones, being on the spot, could see to the wants of the *cestui que trust* much better than Dr. Jones, and properly appropriate the moneys as they might be needed. The income had always been paid to the *cestui que trust* through him. Dr. Jones was not in fault in thus allowing his cotrustee to have the possession of these moneys, in order that he might use them, from time to time, for the purposes of the trust as circumstances might require, and he should not, on that account, be held liable for their misappropriation.

The mortgage in question, to Dr. Jones, given for the misap-

propriated moneys, would, if duly recorded, have been the first lien on the lands described therein. It was not, however, recorded when given, and the mortgagor, needing money, borrowed $3,000 from another person, and gave a mortgage therefor on the same lands, which became the first lien, and afterwards the mortgage to Dr. Jones was recorded and became the second lien.

Dr. Jones was clearly in fault, in not seeing that the mortgage given him was duly recorded. At the time he received it he knew that his cotrustee had used the trust funds for his own purposes; and it became his duty, at once, to take proper steps to secure what he could. So far as loss has occurred by reason of his failure of duty, in this respect, he must be held liable.

The property mortgaged was afterwards sold at judicial sale, by process on the first mortgage, for about $3,100. It would seem not to have been worth any more, and that it sold for its full market value. This amount, after deducting the costs of judicial sale, we may reasonably presume, would have been realized by Dr. Jones on the mortgage, had he seen that it was duly recorded, so as to be the first lien; and he must, therefore, make it good. For the loss beyond this we do not think he should be held responsible. He could in no way have recovered it, and it was not lost by his default. The neglect to record occasioned no loss beyond the value of the property mortgaged, and he should not, on that account, be charged with more than the loss incurred thereby.

It is urged that a joint account having been filed by Dr. Jones, wherein the whole trust fund is included, makes him responsible for the balance stated therein. This would undoubtedly be so if the account were allowed to stand. Dr. Jones, however, by petition of review, asks us to grant him a rehearing, and to relieve him from the payment of $5,000, lost by the act of his cotrustee. We think he should have credit for such amount of the $5,000 as may remain, after deducting the price the mortgaged real estate brought at the sale, less the reasonable costs of sale. This amount, we find, could reasonably have been realized, had the mortgage been properly recorded; and as it was lost through the default of Dr. Jones, he must account for it.

We will refer the matter to the auditor to reform the account in accordance with this opinion, so far as Dr. Jones is

concerned. There is no occasion for such reformation as to Isaac S. Jones. The costs of the audit we direct to be paid by Dr. Jones.

A decree was entered in accordance with the opinion.

Mrs. Ruth A. Hatch and her children took this appeal.

The assignments of error specified the action of the court: (1) In granting to Joseph E. Jones, the petitioner, any portion of the relief prayed for; (2) in holding that the petitioner is liable for the loss only in so far as it resulted from his failure to record the mortgage; (3) in assuming that the mortgaged premises were not worth more than they sold for at the judicial sale; (4) in decreeing "that the account of Dr. Joseph E. Jones, trustee of Ruth A. Hatch, filed on behalf of himself and his cotrustee, and confirmed by the court September 8, 1884, be opened and reformed, and credit therein be allowed as to Dr. Joseph E. Jones, for the sum of $2,175.13, so that the balance exhibited by said account of principal, due from Dr. Joseph E. Jones to the trust estate, shall be reduced from $12,000 to $9,824.87."

*William B. Waddell,* for appellants.—Where a cotrustee does not receive the money, but consents that the other shall misapply it, particularly where he has it in his power to secure it, he is responsible. Pim v. Downing, 11 Serg. & R. 71; Weigand's Appeal, 28 Pa. 471; Hengst's Appeal, 24 Pa. 413.

*C. Wesley Talbot,* for appellee.—Where it is necessary or proper, for the due discharge of the trust, that the trust property should be committed exclusively to the charge of one or more of the cotrustees, the others will not be held liable for the subsequent acts of those to whom it has been so committed. Hill, Trustees, p. 474; Clough v. Bond, 3 Mylne & C. 497.

Wherever it is necessary and convenient for the purposes of the trust, that a part or all of the business thereof should be committed to the charge of one or more of the cotrustees, the others, not being cognizant of a misapplication of the fund, or concurring in any way, will not be held liable. Jones's Appeal, 8 Watts & S. 147, 42 Am. Dec. 282.

. If the acting trustee is known to be a trustee unfitted for the management of the trust, or is suffering under pecuniary em-

barrassment, the cotrustees, in such case, will be responsible if they permit money to be received by him or to remain in his hands. *Re* Evans, 2 Ashm. (Pa.) 470; Pim v. Downing, 11 Serg. & R. 71.

Mere slight suspicions are not sufficient to require the non-acting trustee to interfere. Jones's Appeal, 8 Watts & S. 147, 42 Am. Dec. 282.

One trustee cannot be liable for the default of his fellows without some act of commission or omission, rendering him obnoxious to the charge of having neglected some ascertained duty. Geddis v. Irvine, 5 Pa. 513.

Trustees who act with ordinary care and diligence are not liable for a loss, nor for the mismanagement or insolvency of their agents, which they could neither foresee nor control. Calhoun's Estate, 6 Watts, 185; Moore's Appeal, 10 Pa. 435; Eyster's Appeal, 16 Pa. 372; Newkirk's Appeal, 3 Grant, Cas. 323.

Trustees are liable to a surcharge only when they are guilty of fraud, or supine negligence equivalent to fraud. Springer's Estate, 51 Pa. 342.

It sometimes happens that the convenience or necessities of business require the trust funds to be in the hands of one trustee. If a loss happens from the default of such trustee, the others will not be held to answer—as where a bond is to be collected by one trustee, or money is put in the hands of one to be paid away, the others are not answerable for the loss of it by his insolvency. Hovey v. Blakeman, 4 Ves. Jr. 596; Bacon v. Bacon, 5 Ves. Jr. 331; Perry, Tr. 376.

Devastavit by one of two executors, or administrators, shall not charge his companion, provided he has not intentionally or otherwise contributed to it. That the testator has misplaced his confidence in one shall not operate to the prejudice of the other. 2 Wms. Exrs. p. 1291.

PER CURIAM:

This case has been so well discussed by the learned judge of the court below that we affirm the decree, for the reasons set forth in his opinion.

Decree affirmed and the appeal dismissed, at the costs of the appellants.